IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JAMES ALFRED HUGHES,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 5:13-CV-97-VEH |
| | ) |
| **CAROLYN W. COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**[1]

### INTRODUCTION

Plaintiff James Alfred Hughes brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who

---

[1] Carolyn W. Colvin was named the Acting Commissioner on February 14, 2013. *See* http://www.socialsecurity.gov/pressoffice/factsheets/colvin.htm ("On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security.") (last accessed on March 31, 2014). Under 42 U.S.C. § 405(g), "[a]ny action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office." Accordingly, pursuant to 42 U.S.C. § 405(g) and Rule 25(d) of the Federal Rules of Civil Procedure, the court has substituted Carolyn W. Colvin for Michael Astrue in the case caption above and **HEREBY DIRECTS** the clerk to do the same party substitution on CM/ECF.

denied his application for Supplemental Security Income ("SSI").[2] Mr. Hughes timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[3] For the following reasons, the court **AFFIRMS** the Commissioner's decision.

### STATEMENT OF THE CASE

Mr. Hughes was 54 years old at the time of his hearing before the Administrative Law Judge ("ALJ"). Doc. 10 at 4. He has a tenth-grade education. Tr. 196. He has no past relevant work experience, as he has not reported any earnings since 1987. Tr. 66. He claims he became disabled on April 20, 2010,[4] due to arthritis, a degenerative disc in his lower back, nerve damage in his back and legs, limited mobility in his arm and hand, pain in his neck and shoulder, chronic pain, depression, panic attacks, chronic obstructive pulmonary disease, chronic fatigue, recurring upper respiratory infections, and vertigo. Tr. 194.

On April 20, 2010, Mr. Hughes protectively filed an application for SSI. Tr. 23.

---

[2]In general, the legal standards applied are the same regardless of whether a claimant seeks disability insurance benefits ("DIB") or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted court decisions.

[3]42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

[4]Mr. Hughes originally alleged that he became disabled on October 1, 2003, but later amended it to April 20, 2010. Doc. 11 at 2 n.1.

On June 25, 2010, the Commissioner initially denied his claim. *Id.* Mr. Hughes timely filed a written request for a hearing on July 12, 2010. *Id.* The ALJ conducted a hearing on the matter on May 24, 2011. *Id.* On July 8, 2011, he issued his opinion concluding Mr. Hughes was not disabled and denying him benefits. Tr. 32. Mr. Hughes timely petitioned the Appeals Council to review the decision on July 27, 2011. Tr. 17. On November 14, 2012, the Appeals Council issued a denial of review on his claim. Tr. 1.

Mr. Hughes filed a Complaint with this court on January 15, 2013, seeking review of the Commissioner's determination. Doc. 1. The Commissioner answered on April 29, 2013. Doc. 7. Mr. Hughes filed a supporting brief (doc. 10) on June 13, 2013, and the Commissioner responded with her own (doc. 11) on July 15, 2013.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence

is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[5] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[5] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(I-v). The Commissioner must determine in sequence:

> (1) whether the claimant is currently employed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or equals an impairment listed by the Commissioner;
>
> (4) whether the claimant can perform his or her past work; and
>
> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be

found disabled if she suffers from a listed impairment.  If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

### ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. Mr. Hughes had not engaged in substantial gainful activity since April 20, 2010, the application date and his amended alleged disability onset date.

2. He had the following severe impairments: vertigo, degenerative disc disease, and chronic obstructive pulmonary disease.[6]

3. He did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

4. He had the residual functioning capacity ("RFC") to perform a significant range of light work. Specifically, he was able to lift and carry up to 20 pounds occasionally and 10 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour day. He could occasionally crouch, and knee; never climb ropes, ladders, or scaffolds; frequently climb ramps and stairs, balance, stoop, and crawl; and must avoid concentrated exposure to temperature extremes, humidity, vibration, and fumes with

---

[6]In his opinion, the ALJ appended "shoulders, left knee" to this sentence. Tr. 25. As the Commissioner concedes in her brief, this appears to be a scrivener's error. Doc. 11 at 2 n.2. Because this interpretation accords with the rest of the ALJ's opinion, the court will accept it for the purpose of the present opinion.

        no exposure to hazards. Such a RFC was well supported by the weight of the evidence record.

5. As a result of his RFC as described above, he was unable to perform any past relevant work.

6. He was born on [date redacted by court], 1956, and was 53 years old, which was defined as an individual closely approaching advanced age, on the date the application was filed.

7. He had at least a limited education and was able to communicate in English.

8. Transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that he was "not disabled," whether or not he had transferable job skills.

9. Considering his age, education, work experience, and residual functioning capacity, there were jobs that existed in significant numbers in the national economy that he could perform.

10. Mr. Hughes had not been under a disability, as defined in the Social Security Act, since April 20, 2010, the date the application was filed.

Tr. 23-32.

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672

F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[7] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Mr. Hughes urges this court to reverse the Commissioner's decision to deny him SSI on the grounds that (1) substantial evidence did not support the ALJ's RFC findings, and (2) the ALJ failed to clarify the record by either re-contacting the consultative physician or obtaining a medical expert opinion. Doc. 10 at 6-9. Neither argument is persuasive.

**I.       Substantial Evidence Supports the ALJ's RFC Determination.**

The ALJ determined that Mr. Hughes had the RFC to perform light work with certain restrictions. Doc. 27. In his brief, Mr. Hughes complains that the ALJ did not adequately explain how this RFC determination could accommodate all of his severe and non-severe impairments. Doc. 10 at 7. Mr. Hughes further objects that the ALJ's RFC findings "would in any event better comport with an RFC for sedentary work at best." *Id.* at 8. According to Mr. Hughes, "[a]s an individual of closely approaching advanced age with a limited education and no past relevant work, Medical Vocational Rule (MVR) 201.09 would apply." *Id.*

---

[7]*Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

In response, the Commissioner ably demonstrates why Mr. Hughes's criticisms are unfounded. On the one hand, the record evidence substantially supported the ALJ's conclusion that Mr. Hughes's alleged knee and shoulder arthritis were not severe. Supporting medical evidence includes the following:

- A February 2008 cervical spine x-ray revealed no abnormalities. Tr. 327;

- A March 2004 bone scan also showed no abnormalities in left leg or hip;

- A March 2004 bone scan of his right tibia and fibula "demonstrate[d] no significant abnormality." Tr. 292;

- A November 2007 examination by Dr. Cyrus Ghavam,, M.D., noted that Mr. Hughes' "[hips, knees and ankles [had] a full range of motion without intrinsic joint pain or deformity." Tr. 254; and

- A June 2010 examination by Dr. Bharat Vakharia, M.D., observed that Mr. Hughes's shoulder was only "minimally limited." Although Mr. Hughes had crepitus in his left knee and thumbs, Dr. Vakharia also recorded that Mr. Hughes's arms and legs showed no swelling, bluish discoloration, toenail or fingernail abnormalities, or acute deep vein thrombosis. Tr. 334-35.

The ALJ also noted that Mr. Hughes had not sought "significant medical attention for his knee or shoulders." Tr. 25. This uncontested fact also supports his RFC determination. *See* 20 C.F.R. 416.929(c)(3)(v) (stating ALJ may consider claimant's treatment record when evaluating his or her symptoms); *Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011) (unpublished) (finding claimant's lack of mental

health treatment supported ALJ's finding that her anxiety and depression were not severe impairments).

Substantial evidence also supports the ALJ's decision to discredit Mr. Hughes's complaints of totally-disabling pain. At his hearing, Mr. Hughes testified that his COPD, chronic back and leg pain, and vertigo rendered him functionally disabled. *See* Tr. 27-28, 44-53. A claimant who seeks "to establish a disability based on testimony of pain and other symptoms" must show the following:

- Evidence of an underlying medical condition; and

- either:

    - objective medical evidence confirming the severity of the alleged pain; or

    - that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citation omitted). An ALJ must articulate "explicit and adequate reasons" in order to discredit subjective testimony. *Id.* (citation omitted). Failure to do so "requires, as a matter of law, that the testimony be accepted as true." *Id.* (citation omitted). However, the ALJ does not need to "specifically refer to every piece of evidence in his decision," so long as the decision shows that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (citation omitted).

The ALJ here acknowledged that Mr. Hughes's various impairments "could reasonably be expected to cause some of the alleged symptoms." Tr. 28. However, the ALJ discredited Mr. Hughes's "statements concerning the intensity, persistence and limiting effects of these symptoms." *Id.* In reaching this conclusion, the ALJ provided explicit and adequate reasons. He specifically highlighted the following facts in Mr. Hughes's medical record:

- After his amended alleged onset date, Mr. Hughes had not sought "any specialized care, physical therapy, surgery, or injections for his medical condition;"

- what care he pursued with his family practitioner revealed unremarkable findings; and

- despite allegations of significant shortness of breath, chest pain, back pain, and vertigo, he had not required any emergency room care or hospitalization.

Tr. 28. The ALJ also emphasized that Mr. Hughes's rendition of his own daily activities undermined his case. Specifically, Mr. Hughes confirmed in disability questionnaires that he lived by himself and was able to vacuum occasionally, dust a little, wash a few dishes, fold laundry, clean parts of his apartment, drive three to five times a week, watch television, prepare simple meals for himself, and shop for groceries. Tr. 29, 148-154. The ALJ reasonably found this description to undercut Mr. Hughes's claim that his impairments totally disabled him. The court agrees.

Altogether, the Commissioner has sufficiently shown that the ALJ holistically considered Mr. Hughes's condition before discrediting his pain complaints.

## II. The ALJ Fully and Fairly Developed the Record.

### A. *The ALJ's Duty to Develop the Record*

Social Security proceedings "are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (plurality opinion). The ALJ thus has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Id.* at 111 (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)). The ALJ's "basic obligation to develop a full and fair record," *Coward v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981), exists whether or not the applicant is represented. *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (citation omitted). When the claimant is unrepresented, however, the ALJ's duty is heightened. *See Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982). As the Commissioner notes, Mr. Hughes was legally represented in his hearing below. Doc. 9 at 14 (citing Tr. 48). Thus, the ALJ had no special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id.* (quotation omitted).

The ALJ must specifically "develop the claimant's complete medical history for at least the 12 months preceding the month in which the application was filed, and to make every reasonable effort to help a claimant get medical reports from the

claimant's own medical sources when permission is given." *Robinson v. Astrue*, 235 F. App'x 725, 727 (11th Cir. 2007) (unpublished) (citing 20 C.F.R. § 416.912(d)). The ALJ should re-contact medical sources when the evidence received from that source is inadequate to determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1512(e), 416.912(e). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) (citations omitted).

### B. *The ALJ did not need to solicit an MSS or a consultative examination.*

As noted above, Mr. Hughes argues that the ALJ wrongly failed to "clarify the record" by either re-contacting Dr. Vakharia or by obtaining a medical expert opinion. Doc. 10 at 8. Neither omission was reversible error. An ALJ should solicit a medical expert opinion or a consultative examination "when such an evaluation is necessary for him to make an informed decision." *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (citation omitted). That is, such an assessment is essential when the record is otherwise underdeveloped. The court has already reviewed the analysis performed by the ALJ in this case. The ALJ did not encounter a claimant with an unexamined (or inadequately examined) collection of impairments. Rather, the ALJ confronted a "record contain[ing] sufficient evidence . . . to make an

informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citation omitted). Mr. Hughes – through his counsel – notably did not petition the ALJ to re-contact Dr. Vakharia at the time. Nor did he ask the ALJ to seek a medical expert opinion beyond what was already contained in the record. The ALJ therefore did not err in failing to obtain one unrequested by this represented claimant.

## CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the Commissioner's decision is supported by substantial evidence and that she applied proper legal standards in arriving at it. Accordingly, the court will affirm the decision by separate order.

**DONE** and **ORDERED** this the 31st day of March, 2014.

_/s/ VEHopkins_
**VIRGINIA EMERSON HOPKINS**
United States District Judge